IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THE NETHERLANDS INSURANCE COMPANY** | : | CIVIL ACTION |
| 175 Berkeley Street | : | |
| Boston, MA  02117 | : | |
| | : | NO. |
| and | : | |
| | : | |
| **PEERLESS INSURANCE COMPANY** | : | |
| 62 Maple Avenue | : | |
| Keene, NH  03431, | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| **BUTLER AREA SCHOOL DISTRICT** | : | |
| 110 Campus Lane | : | |
| Butler, PA  16001 | : | |
| | : | |
| and | : | |
| | : | |
| **DALE R. LUMLEY, Ph.D** | : | |
| 120 Shepperd Drive | : | |
| Butler, PA  16002-3666, | : | |
| Defendants | : | |

## COMPLAINT

**NOW COMES**, the Plaintiffs, The Netherlands Insurance Company ("Netherlands") and

Peerless Insurance Company ("Peerless"), by and through their attorneys, Post & Schell, P.C.,

and file the following Complaint against Butler Area School District and Dale R. Lumley, Ph.D,

and in support thereof avers as follows:

## THE PARTIES

1.      Plaintiff, Netherlands, is a New Hampshire corporation with a principal place of

business at 62 Maple Avenue, Keene, New Hampshire.

2.      Plaintiff, Peerless, a New Hampshire corporation with its principal place of

business at 175 Berkeley Street, Boston, Massachusetts.

3.     On information and belief, Defendant, Butler Area School District, is a public education entity incorporated, authorized and existing by virtue of the laws of the Commonwealth of Pennsylvania with a principal place of business located at 110 Campus Lane, Butler, Butler County, PA 16001.

4.     On information and belief, Defendant, Dale R. Lumley, Ph.D is a citizen of the Commonwealth of Pennsylvania residing at 120 Shepperd Drive, Butler, PA 16002-3666, who was at all relevant times employed as the Superintendent of Schools of Butler Area School District.

## JURISDICTION AND VENUE

5.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, in that complete diversity of citizenship exists between the plaintiffs, on the one hand, and defendants, on the other hand, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

6.     Venue of this action is proper in this Court pursuant to 28 U.S.C. § 1391(b), in that both defendants are located or reside in this judicial district and this case concerns an insurance contract, which was entered into in this judicial district.

7.     This is an action brought by Peerless and Netherlands seeking declaratory relief as to the rights and obligations of the parties under insurance policies issued to the Butler Area School District by Netherlands (the "Netherlands Policies") and Peerless (the "Peerless Policies") with respect to a suit filed in this judicial district, captioned *Jillian Tait, et al. v. Butler Area School District, et al.*, No. 2:17-cv-00182 (the "Underlying Litigation").

## NATURE OF THE ACTION

8.     Netherlands and Peerless seek a declaration that they have no obligation under the Netherlands Policy and Peerless Policy, respectively, (a) to defend Butler Area School District and Dr. Lumley in connection with the Underlying Litigation or (b) to pay any amount Butler Area School District and Dr. Lumley may become obligated to pay as a result of a judgment or settlement in connection with the Underlying Litigation.

## FACTUAL BACKGROUND

### I.     The *Underlying Litigation*

9.     On or about February 7, 2017, a Class Action Complaint was filed in the Underlying Litigation (the "Underlying Complaint").  A true copy of the Underlying Complaint is attached hereto as Exhibit A.

10.     The Underlying Complaint was filed by Jillian Tait, a Minor, by and through Jennifer R. Tait, her Parent and Natural Guardian, individually and on behalf of all other similarly situated individuals (collectively, the "Representative Plaintiffs").

11.     The Underlying Complaint includes, *inter alia*, the following paragraphs:

> 1.     This is a class action brought by the Representative Plaintiffs, and other similarly situated individuals as a result of the failure of the Defendant District to warn and/or protect the Representative Plaintiff as well as all of the other similarly situated individuals and members of the class from water Defendant District knew was contaminated with toxic levels of lead.

> 10.     Summit Elementary School's water supply is drawn from a well and proceeds through underground pipes to the school, all of which are located on Defendant District's property and are under Defendant District's care, custody, and/or control.

> 11.     Shortly after August 15, 2016, the Defendants, received test results from the testing company, which indicated the presence of both lead and copper levels far in excess of acceptably safe water standards.

3

12.     At all relevant times hereto, lead levels in drinking water in excess of 15 parts per billion are unacceptable and dangerous.

13.     The aforesaid test results carried lead levels 200-300% higher than acceptable and safe standards, which demonstrated unequivocally that the drinking water at Summit Elementary was adulterated and posed a direct danger to anyone who drank it, especially the school's students.

14.     The Defendants in concert with the Defendant District's Maintenance Director made a conscious and intentional decision to neither warn the students of this dangerous condition nor take any appropriate steps to fix the dangerous condition so as to protect Representative Plaintiff and all other similarly situated students from the dangers related thereto.

15.     The affirmative actions of the Defendants and the District's Maintenance Director created a dangerous environment, to-wit, a school full of poisonous drinking water that none of the students were aware of, for Representative Plaintiff and all other similarly situated students.

16.     At all relevant times hereto, the Defendants knew that lead can cause serious health problems if too much enters the body from drinking contaminated water.

17.     At all relevant times hereto, the Defendants knew that lead can cause damage to the brain and kidneys and can interfere with the production of red blood cells that carry oxygen to all parts of the body.

18.     At all relevant times hereto, the Defendants knew or should have known the lead exposure poses that greatest risk of harm to children. . . .

22.     At all relevant times hereto, the Defendants knew or should have known that by drinking the water at Summit Elementary School which was contaminated with poisonous levels of lead and copper the students would be caused to suffer some and/or all of the harms averred herein.

25.     Under the circumstances as herein described, the Defendants were required to warn of the dangerous conditions and immediately stop the use of all drinking water outlets within Summit Elementary until the source of the lead contamination was found and the lead levels were reduced to 15 parts per billion or less.

26.     Despite the aforesaid knowledge, the Defendants never told any of the affected class members, Representative Plaintiff and the students of Summit Elementary, that the drinking water within the school was known to contain dangerous levels of lead.

4

27.     At all relevant times hereto, the Defendants allowed and/or created a dangerous condition to exist on the property/premises of Summit Elementary School consisting of drinking water contaminated with toxic elements as described herein, which posed a direct threat to the health and wellbeing of anyone who drank it and in particular children.

32.     Between August 15, 2016 and January 20, 2017, Plaintiff and all other similarly situated individuals did drink and/or were caused to ingest the toxic water as described herein.

33.     As a direct and proximate result of the foregoing, Plaintiff and all other similarly situated individuals were caused to sustain injuries and damages more specifically set forth hereafter. . . .

35.     At all times relevant hereto, the Defendants had a responsibility to warn invitees like Plaintiff and all other similarly situated individuals that the drinking water within the school was contaminated with toxic levels of various elements as described herein.

36.     In fact, the Defendants delayed notifying Representative Plaintiff and all other members of the class of the dangerous condition which lurked in the drinking water until it finally mailed a notification letter dated January 20, 2017. A true and correct copy of this letter is attached hereto as Exhibit "A".

38.     On multiple occasions between August 15, 2016 and January 20, 2017, Representative Plaintiff, Jillian Tait, drank and/or ingested the toxic water described herein.

39.     Resultantly, Representative Plaintiff did inadvertently and routinely consume dangerous levels of lead, which resultantly caused injury to Representative Plaintiff's body.

40.     The Defendants did not notify Representative Plaintiff until on or about January 20, 2017 about her exposure to toxic levels of lead as a result of drinking that aforesaid toxic water over the course of the prior five (5) months (if not longer). . . .

42.     Representative Plaintiff has subsequently undergone medical evaluation(s) and/or treatment(s) for her exposure to the toxic water and will require additional medical care and/or treatment(s) in the future.

43.     Representative Plaintiff has been caused extreme mental and emotional anguish and distress, causing severe depression, nightmares, stress, and/or anxiety, some or all of which have or may require psychological treatment. . . .

5

65. As a result of the actions and/or omissions of Defendant District and/or Defendant Lumley, Representative Plaintiff and all other class members are at risk for developing various complications known to be directly caused by exposure to toxic levels of lead and/or copper, including but not limited to, physical and mental developmental delay, learning difficulties, irritability, loss of appetite, weight loss, sluggishness and fatigue, abdominal pain, vomiting, constipation, hearing loss, seizures, high blood pressure, joint and muscle pain, difficulties with memory or concentration, headache, and/or mood disorders.

12.     The Underlying Complaint sets forth the following Counts: Negligence; Medical Monitoring; and Violation of Constitutional Right to Bodily Integrity.

## II.     The Netherlands and Peerless Policies

13.     For successive annual periods from July 1, 2015 to July 1, 2017, Netherlands issued to the Butler Area School District Commercial Package ("CP") policies including the following coverage parts: Commercial General Liability ("CGL"); Pollution Liability ("PL"); and School Leaders Errors and Omissions ("SLEO").  A true and correct copy of the Netherlands Policy issued for the period from July 1, 2016 to July 1, 2017 is attached hereto as Exhibit B.

14.     With respect to CGL coverage, Coverage A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY of the Netherlands Policy states:

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.     Insuring Agreement**

**a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and

settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** — Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments — Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** — Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period....

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** — Who Is An Insured or any "employee" authorized

7

by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.**   "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** — Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

   **(1)**   Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

   **(2)**   Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

   **(3)**   Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.**   Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

   **2.**   **Exclusions**

15.    The terms "bodily injury," "occurrence" and "pollutants" are defined in the

Netherlands Policy as follows:

   **3.**   "Bodily injury" means physical injury, sickness or disease sustained by a person.   This includes mental anguish, mental injury, shock, fright or death that results from such physical injury, sickness or disease.

   **13.**   "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. . . .

   **18.**   "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot,

8

fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

16.     The Netherlands Policy contains the following exclusions applicable to the CGL coverage part:

This insurance does not apply to:

**a.     Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. . . .

**f.     Pollution**

**(1)**     "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)**     At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. . . .

\*          \*          \*

**1.**     "Bodily injury", "property damage" or "personal and advertising injury" arising, in whole or in part, either directly or indirectly out of the mining, processing, manufacture, storage, distribution, sale, installation, removal, disposal, handling, inhalation, ingestion, absorption, use or existence of, exposure to, or contact with lead or lead contained in goods, products or materials; or

**2.**     Any loss, cost or expense arising out of any:

**a.**     Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead or lead contained in goods, products or materials; or

**b.**     Claim or suit by or on behalf of a governmental authority for damages because of testing for,

9

monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead or lead contained in goods, products or materials.

17.     The Netherlands Policy also contains PL coverage.  The Insuring Agreement of this coverage is as follows:

**1.     Insuring Agreement — Bodily Injury And Property Damage Liability**

**a.**     We will pay those sums that the insured becomes legally obligated to pay as compensatory damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "pollution incident" and settle any claim or "suit" that may result.  But:

**(1)**     The amount we will pay for damages is limited as described in Section **III** — Limits Of Insurance; and

**(2)**     Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

**b.**     This insurance applies to "bodily injury" and "property damage" only if:

**(1)**     The "bodily injury" or "property damage" arises out of a "pollution incident" originating from:

**(a)**     The use of, or storage of, "pesticides" or fertilizers by you or on your behalf provided the usage and storage:

10

**(i)** Meet all standards of any statute, ordinance, regulation or license requirement of any federal, state or local government which pertain to the "pesticides" or fertilizers; and

**(ii)** Are confined to necessary maintenance of the premises at the "insured site" as a school;

**(b)** The use of, or storage of, chlorine or other chemicals or materials by you or on your behalf at the "insured site" for the maintenance of a swimming pool, whirlpool or spa.

**(2)** The "bodily injury" or "property damage" is caused by a "pollution incident" that commences on or after the Retroactive Date shown in the Declarations;

**(3)** The insured's responsibility to pay damage because of "bodily injury" or "property damage" is determined in a "suit" on the merits in the "coverage territory" or in a settlement we agree to; and

**(4)** A claim for damages because of the "bodily injury" or "property damage" is first made against any insured, in writing, in accordance with Paragraph **c.** below, during the policy period or any Extended Reporting Period we provide under Section **V** — Extended Reporting Period Option.

**c.** A claim by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

**(1)** When notice of such claim is received and recorded by any insured or by us, whichever

11

comes first; or

**(2)**   When we make a settlement in accordance with Paragraph **l.a.** above.

All claims for damages because of "bodily injury" to the same person, including damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury", will be deemed to have been made at the time the first of those claims is made against any insured.

All claims for damages because of "property damage" causing loss to the same person or organization as a result of a "pollution incident" will be deemed to have been made at the time the first of those claims is made against any insured. . . .

18.   The definition of "pollution incident" is:

"Pollution incident" means emission, discharge, release or escape of "pollutants" into or upon land, the atmosphere, or any watercourse or body of water, provided that such emission, discharge, release or escape results in "environmental damage". The entirety of any such emission, discharge, release or escape shall be deemed to be one "pollution incident".

19.   The PL coverage includes exclusions for Prior Pollution Incidents, Expected or Intended Injury, Failure To Comply With Environmental Laws, and Statutory or Governmental Assertions And Clean-Up Costs as follows:

**a.**   **Prior Pollution Incidents**

"Bodily injury" or "property damage" caused or contributed to by any "pollution incident" that commenced prior to the Retroactive Date shown in the Declarations.

**b.**   **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. . . .

**l.**   **Failure To Comply With Environmental Laws**

12

"Bodily injury" or "property damage" arising out of a "pollution incident" which results from or is directly or indirectly attributable to failure to comply with any applicable statute, regulation, ordinance, directive or order relating to the protection of the environment and promulgated by any governmental body, provided that failure to comply is a willful or deliberate act or omission of:

(1)     The insured; or

(2)     You or any of your members, managers, partners or "executive officers". . . .

**n.      Statutory Or Governmental Assertions And Clean-Up Costs**

Any loss, cost expense or obligation:

(1)     Asserted against you under the statutory authority of a governmental agency; or

(2)     Incurred by you or others to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize "pollutants" on or at a "waste facility" or any premises you own, rent or occupy. . . .

20.     The Netherlands Policy also contains a SLEO coverage part. The Insuring Agreement of this coverage is as follows:

**A.      Insuring Agreement**

**1.**      We will pay those sums that the insured becomes legally obligated to pay because of "loss" arising from a "wrongful act" to which this insurance applies. . . .

21.     The Defense and Defense Expense language of the SLEO coverage follows:

**B.      Defense And Defense Expense**

**1.**      We will have the right and duty to defend the insured against any "suit" seeking:

**a.** "Loss" because of a "wrongful act" to which this insurance applies.  But:

**(1)** When the Each Wrongful Act Limit or Aggregate Limit has been used up in the payment of "loss", our duty to defend ends with respect to any "suit" seeking "loss" subject to such exhausted limit; and

**(2)** We will have no duty to defend the insured against any "suit" seeking "loss" to which this insurance does not apply.

**b.** Only injunctive or other non-monetary relief because of a "wrongful act" to which this insurance applies.  But:

**(1)** When the Aggregate Defense Expense Amount — Non-Monetary Relief is used up in the payment of "defense expenses", our duty to defend ends with respect to any "suit" seeking injunctive or other nonmonetary relief subject to such exhausted limit; and

**(2)** We will have no duty to defend the insured against any "suit" seeking injunctive or other non-monetary relief to which this insurance does not apply. . . .

22. Defined terms under the SLEO coverage include the following:

**A.** "Bodily injury" means physical injury, sickness or disease sustained by a person. This includes mental anguish, mental injury, shock, fright or death that results from such physical injury, sickness or disease.

**B.** "Claim" means:

**1.** A written demand for monetary damages, or

14

injunctive or other non-monetary relief; or

**2.**     A "suit"

against an insured for a "wrongful act" to which this insurance applies. . . .

**H.**     "Loss" means monetary damages, judgments or settlements.  "Loss" does not include: …

2. Cost of compliance with any injunctive or other monetary relief action. . . .

5. Punitive or exemplary damages.

6. The multiplied portion of multiple damages.

7. Fines or penalties imposed by law.

8.  Matters deemed uninsurable according to the law under which this policy is construed. .

**N.**     "Wrongful act" means any actual or alleged act, breach of duty, neglect, error, omission, misstatement, or misleading statement committed by the insured, or by any person for whose acts the insured is legally liable, while in the course of performing "educational institution" duties.

23.     Exclusions under the SLEO coverage include the following:

This insurance does not apply to . . . [:]

**2.     Bodily Injury or Property Damage**

Any "claim" arising out of:

**a.**     "Bodily injury"; or

**b.**     Physical injury to tangible property, including all resulting loss of use of that property. . . .

**5.     Criminal, Fraudulent, Malicious or Dishonest Acts**

Any insured who commits, participates in or consents to a

15

"wrongful act" that is criminal, fraudulent, malicious or deliberately dishonest. . . .

**12.    Pollution**

Actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants; or for any loss, cost or expense arising out of environmental impairment statutes or regulations, or governmental or any other request, demand or order to test, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of pollutants.

Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed. . . .

**14.    Lead**

Any "claim" arising in whole or in part out of:

**a.**    The installation, storage, removal, disposal, handling, use or existence of, exposure to, or contact with lead or materials containing lead; or

**b.**    The cost or expense arising out of any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead or materials containing lead. . . .

24.    For successive annual periods from July 1, 2015 to July 1, 2017, Peerless issued to the Butler Area School District Commercial Umbrella ("CU") insurance policies ("Peerless Policy").  A true and correct copy of the Peerless Policy issued for the period from July 1, 2016 to July 1, 2017 is attached hereto as Exhibit C.

25.    The Insuring Agreement of the Peerless Policy state:

**1.    Insuring Agreement**

**a.**    We will pay on behalf of the insured those sums in

16

excess of the "retained limit" that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies.  The amount we will pay is limited as described in **SECTION III - LIMITS OF INSURANCE.**  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under paragraph **2, Defense And Expense Of Claims And Suits** under **SECTION I - COVERAGE.**

**b.**      This insurance applies to:

(1)      "Bodily injury" or "property damage" only if:

(a)      The "bodily injury" or "property damage" occurs during the Policy Period; and

(b)      The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory."

26.      The Defense And Expense of Claims And Suits provision of the Peerless Policy states:

**2.**      **Defense And Expense Of Claims And Suits**

**a.**      **Defense, Investigation And Settlement**

(1)      We shall have the right and duty to defend the insured against any claim or "suit" seeking damages to which this insurance applies when:

**(a)**      Such damages are not covered by "scheduled underlying insurance" or "other underlying insurance"; or

**(b)**      The applicable limits of liability of the "scheduled underlying

17

insurance" or "other underlying insurance" have been exhausted by payment of judgments or settlements.

However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. . . .

27.    The Exclusions section of the Peerless Policy includes the following exclusions:

This insurance does not apply to:

**a.    Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. . . .

**i.    Pollution**

**(1)**    "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time;

**(2)**    "Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants"; or

**(3)**    "Pollution cost or expense".

Exception:

Provisions **(1)** and **(3)** of this exclusion **3.i.** do not apply to the extent that valid "scheduled underlying insurance" is applicable to the "bodily injury", "property damage" or "pollution cost or expense" described above or would have been applicable to such injury, damage or expense but for the exhaustion of the limits of the "scheduled underlying insurance". . . .

18

**u.   Lead**

**(1)**   "Bodily injury", "property damage" or "personal and advertising injury" arising, in whole or in part, either directly or indirectly out of the mining, processing, manufacture, storage, distribution, sale, installation, removal, disposal, handling, inhalation, ingestion, absorption, use or existence of, exposure to, or contact with lead or lead contained in goods, products or materials; or

**(2)**   Any loss, cost or expense arising out of any:

**(a)**   Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead or lead contained in goods, products or materials; or

**(b)**   Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating,, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead or lead contained in goods, products or materials. . . .

## III.   Denial of Coverage By Netherlands and Peerless

28.   By letters dated February 17, 2017, Netherlands and Peerless advised Butler Area School District and Dr. Lumley that Netherlands and Peerless would not participate in their defense in connection with the Underlying Litigation or pay any amounts in settlement of the Underlying Litigation or to satisfy any settlement achieved or judgment rendered against either

of them in the Underlying Litigation.  True and correct copies of the letters to the Butler Area School District and Dr. Lumley are attached hereto as Exhibits D and E.

## NECESSITY OF DECLARATORY JUDGMENT

29.     An actual controversy has arisen between the parties in that Butler Area School District and Dr. Lumley tendered the Underlying Complaint to Netherlands and Peerless for defense and coverage and Netherlands and Peerless have asserted that they have no obligation to defend Butler Area School District or Dr. Lumley in connection with the Underlying Litigation or to pay any liability which Butler Area School District or Dr. Lumley may incur, whether through a settlement, judgment or otherwise, in connection with the Underlying Litigation.

30.     Consequently, Netherlands and Peerless seek a declaration of their rights and obligations.

## COUNT I

### DECLARATORY RELIEF
### AGAINST BUTLER AREA SCHOOL DISTRICT AND DR. LUMLEY

31.     The allegations contained in paragraphs 1 through 30 of this Complaint are incorporated herein by reference as though set forth at length herein.

32.     Based upon a review of the Underlying Complaint in comparison to the language of the Netherlands and Peerless Policies, there is no coverage and no duty to defend Butler Area School District or Dr. Lumley in connection with the Underlying Litigation.

33.     In order to qualify for coverage under the Netherlands and Peerless Policies, the Underlying Complaint against Butler Area School District and Dr. Lumley must contain allegations for which the insurance applies under the CGL, PL or SLEO coverage parts of the Netherlands Policies or the CU coverage of the Peerless Policies.

20

34.     The Underlying Complaint alleges a claim arising in whole or in part out of the exposure to, or contact with lead or materials containing lead.

35.     The Lead exclusions in the Netherlands and Peerless Policies bar coverage for such claims.

36.     The Underlying Complaint alleges a claim for bodily injury arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at a premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, Butler Area School District.

37.     The Pollution exclusions in the Netherlands and Peerless Policies bar coverage for such claims.

38.     The PL Coverage is not implicated in connection with this matter because that coverage applies only when bodily injury or property damage arose out of a pollution incident which originated from the use of (1) pesticides or fertilizers or (2) chlorine or other chemicals used for the maintenance of a swimming pool, whirlpool or spa.

39.     The Underlying Complaint does not allege a claim for bodily injury arising out of the use of (1) pesticides or fertilizers or (2) chlorine or other chemicals used for the maintenance of a swimming pool, whirlpool or spa.

40.     In addition to other exclusions, the SLEO coverage is clearly not implicated in this matter because the claims at issue are claims for bodily injury and the SLEO coverage excludes coverage for "Any 'claim' arising out of . . . 'Bodily injury.'"

41.     In addition to the other exclusions of the Netherlands and Peerless Policies, to the extent that the allegations of the Underlying Litigation include claims for bodily injury "expected

or intended from the standpoint of the insured," or that is "criminal, fraudulent, malicious or deliberately dishonest," there is no coverage.

42.      As a result, because the claims asserted in the Underlying Complaint are excluded from coverage under the Netherlands and Peerless Policies, Netherlands and Peerless are not obligated to defend Butler Area School District and/or Dr. Lumley in connection with the Underlying Litigation or to pay any judgment entered against Butler Area School District and/or Dr. Lumley in connection with the Underlying Litigation.

**WHEREFORE**, Plaintiffs, The Netherlands Insurance Company and Peerless Insurance Company, respectfully request that this Court enter:

(a)      An Order declaring that Plaintiffs, The Netherlands Insurance Company and Peerless Insurance Company, are not obligated to defend Butler Area School District and/or Dr. Lumley in connection with the Underlying Litigation;

(b)      An Order declaring that Plaintiffs, The Netherlands Insurance Company and Peerless Insurance Company, are not obligated to pay any judgment entered against Butler Area School District and/or Dr. Lumley in connection with the Underlying Litigation;

(c)      An Order for such other or alternative relief consistent with the claims and causes asserted in this Complaint.

POST & SCHELL, P.C.

Date:  March 15, 2017                    By    /s/ John C. Sullivan
                                               John C. Sullivan
                                               Atty. I.D. No. 32262
                                               Kathleen K. Kerns
                                               Atty. I.D. No. 57439
                                               Four Penn Center – 13th Floor
                                               1600 John F. Kennedy Boulevard
                                               Philadelphia, PA  19103
                                               Phone:  (215) 587-1000
                                               Fax:  (215) 587-1444
                                               E-mail:  jsullivan@postschell.com
                                               Attorneys for Plaintiffs, The Netherlands
                                               Insurance Company and Peerless Insurance
                                               Company